Good morning. May it please the Court. My name is Gilbert Ryan. I'm an Assistant United States Attorney in the Eastern District of New York. And I've represented the government before the District Court in this case. The District Court committed multiple errors in suppressing the contents of Robinson's iPhone, a phone which when searched was found to contain 457 videos and 235 images showing children being raped and sodomized. The government affirmatively appealed that decision and Robinson has moved to dismiss the appeal. As we've stated in response to that motion, that motion should be denied because that issue is moot. This Court's holding in the United States against Romanesco makes clear that even the late filing of a required certification under Section 3731 does not deprive this Court of jurisdiction. And in this case— But it confers upon its discretion. It does if the Court were to believe that it was late. In this case, the discretion should be exercised to hear this case because the government went through all the steps necessary to certify this appeal. The government filed certification from the person who was the U.S. attorney and that person has since been appointed by the judges of the District Court. And in any event, the government honored Section 3731 by scrupulously reviewing this case within the office and ultimately getting a certification from the U.S. attorney general herself. And that was timely? Yes. Or was that late? The certification from the attorney general was filed after the notice of appeal was filed, but it was still timely because this is not a jurisdictional issue. Sure. It was what, four months late? Well, the certification from the attorney general was filed at the time of the merits brief, so in September, when the notice of appeal had been filed earlier on. So in any event— Prior to the filing of the notice of appeal, is there a set procedure within the Eastern District with regard to—is there a set of protocols that the line attorney, you had to follow prior to the certification? Absolutely. And this is laid out in the declaration we filed with our papers. The appeal was reviewed by myself, by my section chief, by the chief of the appeal section, by members of our front office who include the chief of the criminal division, and the first assistant U.S. attorney, and ultimately with the U.S. attorney herself. And there was—before the filing of the brief in this case, the solicitor general approved the filing of that brief. But prior to the filing of the notice of appeal, that whole line that was—you had a two-page affidavit that you submitted in opposition to the motion. Correct. That procedure all occurred prior to the filing of the notice of appeal? That is correct. Yes, that's correct. Are there any other cases before or after this one involving this issue where the certification, the timing is at issue? Well, certainly there's cases where the timing is at issue. The case I talked about was Romanesco, where there was a certification that was filed after the notice of appeal was filed. And in that case, the court held—this court held that it is not a jurisdictional issue. I mean right now, not precedent. Not that I'm aware of that are right now that have been about this particular issue. So I'd like to move on and address the merits of this appeal. Here, a customs officer performed a manual search—that is, a hand search—of the defendant's cell phone and found several images showing young boys performing oral sex on adult men. The government then obtained a search warrant to further search the phone and found hundreds more similar images. The district court erred in holding that the manual search of a cell phone conducted at the border requires probable cause and a warrant. Now, as the Supreme Court has made clear, searches at the border are reasonable without warrant simply by virtue of the fact that they occur at the border. This is black-letter laws from the United States against Ramsey. They have to be routine? Well, a routine search does not require any level of suspicion. It does not even require reasonable suspicion at all. So I understand your position. It's that anyone returning from abroad at an airport or port can have their phone manually searched by the government. Texts, payment apps, whatever other apps are on their pictures for 30 minutes or longer, maybe hours, for no reason at all. Certainly a brief manual search of a cell phone is routine and does not require any level of suspicion. Where is the brevity? What's the government's interest from the standpoint of protecting the border of knowing what I've looked at with regard to my most recent searches on my search engine on my phone? What's the government's interest in that in terms of border security, customs, et cetera? So certainly in this case, the issue was contraband. It was child pornography. But the contraband was based, the reason why they wanted to look at the phone for contraband is because they had a hit. You had a hit from a notifying agency that the defendant had been involved with regard to the purchase of some suspicious content three or four years earlier. But that's not what I'm asking about. I'm asking about what, because you're saying that it's a routine matter, and in response to Judge Parts, you said that, yes, they could review a phone. And so I live in the western part of the state and we go to Canada regularly. So what's the customs agent's interest in my phone that he can just ask for my phone at any point in time with regard to the inherent – what's been recognized as the reason why suspicious searches are okay on the border from a customs standpoint? As this court has already held in Levy, the customs officers have a broad border search authority. However, that authority, the exercise of it, does not have to be linked to what might be traditionally considered to be within the wheelhouse of customs, so interdicting contraband or national security concerns. The fact is they have that power, and so because they're law enforcement officers, they don't have to show a blind eye if they find evidence of criminality in a device. They have this power. The reason why they have this power – but you still haven't answered my question. What's the reason that makes this a common search? What is it within my cell phone? Now, I pay all my bills on my cell phone. I do a number of things. In fact, I don't even use paper checks anymore. That poor company is probably going out of business because everybody – all my credit card transactions are on it. I don't even have to buy a subway card anymore for Christ's sake. All I have to do is show the phone and I get on the subway. So I don't – but what is it about the cell phone that there's an interest in the government at the border? Well, I mean I can understand if I'm coming over from Toronto and the customs agent says, Have you bought anything? Do you have anything that you're bringing back to the United States? And someone's a little nervous, and all of a sudden your car gets – they go through your car and they look through your car. But what is it about the phone? What is there on the phone that says that they have an inherent interest in looking at that phone to know that there's something of interest to the government? Well, the phone is personal property, and as the Supreme Court has made clear and as this court has made clear in decisions such as Irving and Levy, routine – personal property is almost – is a routine search. In fact, in Levy, the court suggested skepticism that the search of personal property, which a cell phone is, would ever rise to the level of non-routine. The line that is drawn in the case law has been searches of personal property versus invasive searches of a person, with personal property being routine and searches of a person being non-routine. So it sounds like your argument is that it doesn't have to be tethered to a search for contraband. It can be any general criminal investigative order or other purpose. That is correct, and that is what this court said in Levy, is that it does not need – in fact, Levy was a securities fraud case. It did not necessarily have anything to do with the border at all. However, that search was approved by this court. Go ahead. Would that apply to lawyers and judges? I mean, lawyers may have attorney-client privilege material. I might have draft opinions from my colleagues. There are no restraints at all? So the issue here is what the Fourth Amendment allows. Now, what certainly CBP does is it has its own regulations as to when it will permit certain searches, and Congress can certainly legislate in this area. But in terms of the Fourth Amendment, which sets the floor here, these are permissible searches. They're searches of personal property, and there might be other avenues, maybe civil avenues, that somebody could take if they think that they've been improperly targeted for a search. But in terms of what the Fourth Amendment allows, which is the question in this case, these are permissible searches. And the government also submits – well, first – I mean, if the border search exception exists to restrict the people and things entering the country, your position seems quite broader than that. Well, the border search applies to many things that might be considered sensitive. If you were to take your mobile home, your house, over the border, it would be subject to a border search and could be the subject of a routine search. And so we're actually talking about – Let me ask something similar. Your friend on the other side says that there could be no digital contraband in any event. So unlike tangible things, pictures sort of exist on servers somewhere that aren't really on your phone at all. What's your response to that? I think that this case shows that that's not true. There was 700 images and videos of child abuse material. And it's not to say that a picture might only be on someone's phone and wouldn't be in a server somewhere. And even if that were the case, it wouldn't restrict CBP's interest in preventing a device with this type of contraband from coming over the border. In any event, the government submits that – well, first I should note that this issue is already before the court in several other cases, including Alice Seegway, Kamaldos, and Smith. But the government submits that this court could reverse the district court's decision based upon the good faith exception here. The holding in the case that the district court reached was fundamentally a misapplication and interpretation of this court's precedence. I've already mentioned several cases, including Irving and Levy. In Irving, this court ruled that the searches of luggage or personal belongings are routine searches requiring no level of suspicion. And this court has never ruled otherwise regarding personal property. In Levy, the court said the same thing. And in Levy, the court actually referred to a Ninth Circuit case, United States v. Arnold, which dealt with the manual search of a device in order to justify – So you think we really don't have to wait on a cue because of the good faith exception. But the good faith exception itself is based on a view of the state of the law.  And one of the cases ahead of us might comment on the state of the law. I'm not quarreling with your view of it, but we would be subordinate to what an earlier – some prior panel holds on that. It certainly might. I do think, though, that as a matter of law. The law was very clear at the time. Well, the law at the time of the search in this case showed that routine searches of personal property required no level of suspicion. And all the courts of appeals that had considered cases before the search in this case had found that a manual search of a phone was not an invasive search and was a routine search requiring no level of suspicion. And so the officers who were conducting the search in good faith relied on that state of the law to determine that they had the power to do this search. Well, what about the district court's conclusion that it was actually bad faith that the officer, Stephen, omitted the fact – used voluntary when that seemed to be misleading to the district court and omitted any mention of the text report, which seemed to be the entire basis for the search? Thank you for that question, Judge. It's a very important point. The district court got that it was mistaken, and that is an erroneous factual finding. As this court has made very clear in Irving, the reason why a search is being conducted has no bearing at all on why a search is routine versus non-routine. What makes a search routine versus non-routine, what this court said in Irving, is the invasiveness of the search. Why the search is being conducted did not matter because the magistrate judge knew from the face of the warrant that what was being searched was a cell phone. And so as a matter of law, the magistrate judge had all the magistrate judge needed to determine that the search was either routine or non-routine in the magistrate judge's interpretation of the law. With regard to whether or not the search was voluntary or not, on the face of the warrant – or I should say on consent or not – on the face of the warrant, the warrant says that the defendant voluntarily provided the passcode. But within the context of the broader warrant, it was eminently clear that this was a border search. CBP was using its border search authority, and that's the authority that was used to search the phone. The district court engaged in this hyper-technical reading of the warrant, which is exactly what this court and the Supreme Court have said should not be done. And that, in conjunction with the district court's misunderstanding of border search law, its fundamental disregard for Irving, infected its factual findings, which actually are based nowhere in the record and are based on just conjecture and surmised. And so for that reason, those findings are clearly erroneous. This court should be left with a definite and firm conviction that a mistake has been made here. I see that my time has expired. I have reserved some time on rebuttal. Thank you, counsel. Good morning, Your Honors. May it please the court, my name is Ashok Chandran from the Federal Defenders here on behalf of Mr. Robinson. I'd like to spend most of my time talking about the merits of the appeal, but just in quick response to something that my colleague on the other side said regarding our motion to dismiss this appeal. The government makes a lot of the internal review process that happened before the appeal was filed in this case. But I'll just note that everything that the government references is something that happened below the level of the U.S. attorney. That is, the section chief, the chief of appeals, the first assistant, as stated in the declaration. And as the Ninth Circuit made clear in WIROC, the entire purpose of Section 3731 is that someone at the level of the U.S. attorney or higher certifies. I thought it included the head of the criminal division in Washington. That's precisely what the court in WIROC found insufficient, the chief of the criminal division in Washington. The purpose of the certification is to assure this court that it's being taken thoughtfully and not to waste our time, and the government's committed to it. So why wouldn't all of these things factor into that? They can certainly factor into it, but Congress, in drafting Section 3731, chose to require the U.S. attorney or someone above them to certify the appeal. And in WIROC, the Ninth Circuit considered the specific chain of command being cited by the government here and rejected that as insufficient because the language of the statute is unambiguous. So that's the only thing I wanted to say about the motion. I'm happy to answer any questions. I have a question about interpretation of 546. If a U.S. attorney was appointed and suddenly died just a few days in, is your reading of 546 that that's it, it's a one-shot deal, and it gets kicked over to the district court to replace the U.S. attorney? No, that's not our reading. I think our reading is exactly what the courts in Girard, James, and Comey put forward, that as soon as the attorney general invokes the appointment power under Section 546, she has a period of 120 days during which she can make as many appointments as she wishes. So in your hypothetical, Judge Park, if the interim appointee is appointed and then for some reason cannot continue serving after just a few days, the attorney general could designate someone else to be the appointee. And the next person has 120 minus X days. That's correct. And that's what they deserve. Yeah, and that's exactly what the courts in Girard, James, and Comey have held. So turning quickly to the merits, unless there are more questions about the motion. Just briefly, are you suggesting that a review process that then reports to the U.S. attorney is insufficient? I think if it doesn't involve a validly appointed U.S. attorney themselves, it is insufficient. So you're suggesting the U.S. attorney should read all the transcripts and read all the writings, everything, the whole record of the case before the certification is made, that they can't rely upon some kind of process by which line attorneys report to supervisors and then there's a summary made to the U.S. attorney, conclusions are reached. You're saying that's insufficient? No, Your Honor. We're not saying that the U.S. attorney has to be involved in a particular manner, but the U.S. attorney does have to be involved and certify the appeal under 3731. So, of course— But how he or she comes to certify it can be an internal process of review by others and recommendation to the U.S. attorney? That's correct, Your Honor. So long as the U.S. attorney ultimately makes the decision to certify the appeal, that's all that 3731 should do. I understand. Thank you. So, shifting to the merits of this appeal, this Court's decision in Irving and the Supreme Court's decision in Riley set forth two dispositive propositions of law. First, as my colleague on the other side has acknowledged, whether a search is routine or non-routine depends on how substantial an invasion of privacy that search works. And second, that the search of a cell phone is among the most invasive searches that the government can do. Taken together, those two propositions lead to one inevitable outcome, that the search of a cell phone at the border is not routine. And because the search of a cell phone at the border is not routine, under Irving, it must be supported by at least reasonable suspicion, though we submit that the District Court properly held that in the context of digital contraband, probable cause is the appropriate standard. But this Court doesn't need to resolve that question. What other types of searches at the border require probable cause and a warrant? So far, this Court has not found that any border searches require probable cause and a warrant. Has any Court of Appeals found that that's required? To our knowledge, no, Your Honor. So this would be the first instance. But I think there are valid reasons to do so, as Judge Rakoff noted in Smith. There's not as clean of a fit between the border search exceptions purposes and digital contraband. But again, this Court doesn't need to weigh into that because the District Court here properly found that even the lower reasonable suspicion standard was not met. But your rule would apply to all digital devices, right? Like laptops, presumably, tablets, thumb drives, all digital data? I think thumb drives might be slightly different because they're sort of a more limited data storage device. But I think certainly with laptops, tablets, cell phones, they're all, in 2026, functionally the same device. And so at the time of this search, had any Court of Appeals held that a border search requires a warrant for any reason, for anything? No, Your Honor. At this point, no circuit has held that a border search requires probable cause and a warrant. But again, I think this Court doesn't even need to reach that question because even under the lower reasonable suspicion standard that has been applied in other cases, reasonable suspicion was lacking here. And that's because the only basis for this search, as was being briefly discussed, was the text lookout. And that text lookout was two sentences, one of which was the directive to search the devices. And the other was just a conclusory statement that Mr. Robinson was linked to a purchase of child pornography at some point in the past in some unspecified way. And that text lookout was also three years old, which, under this Court's precedence in Raimondo, was far too stale to give rise to reasonable suspicion at the moment Mr. Robinson's phone was searched. So it wouldn't be a material circumstance that this flag was posted? I'm sorry. So it wouldn't be material to the consideration of the legality of the search? Certainly, we would agree that the text lookout is one factor, but this particular text lookout, given the generality and the age, was not sufficient to, standing alone, create reasonable suspicion. If this is stale, and it probably is, I mean, what, three years, four years? And if all it says is it linked, I don't know what that means. And if the district court is right, that linkage, whatever that is, is vague, and several years makes it stale, then what was the basis for the district judge saying that the border officer, or no, I'm sorry, that the affidavit was misleading the court by not explaining it? And going into it, if it's nothing, then why attack the affidavit for not mentioning it? Well, Judge Jacobs, I think there's a difference between the relevance of the fact for assessing whether the Fourth Amendment was met, and the relevance of the fact for understanding the investigative methods that the officers took in generating the facts that they relied on in the warrant. So under this court's decision in Riley, it's confusing, there are two Riley's, but the Second Circuit's decision in Riley, officers have to give a magistrate judge a full accounting of what they did in order to allow the magistrate judge to evaluate whether any earlier Fourth Amendment violations infected the facts that formed the basis of the warrant affidavit. So even if the fact didn't give rise to suspicion for purposes of the Fourth Amendment analysis that the district court did regarding the search of the cell phone at JFK, it was still part of the evidentiary narrative for how agents acquired the evidence that they relied on in the warrant affidavit. So part of the narrative had been omitted, and that's the basis saying that the affiant acted with reckless disregard and did a dishonest thing. That's not the sole basis, Your Honor. So I think it's the omission of the action. Coupled with the inclusion of what the government says was an irrelevant detail, the voluntary provision of the passcodes for search of the phone. When you add those two things together, the fact that the district court, the fact that the magistrate judge was not told that Mr. Robinson was targeted pursuant to this text lookout for a search, and the magistrate judge was told that he voluntarily turned over the passcodes for the devices, it was not a clearly erroneous decision for the district court to find that taken together, that paragraph makes it seem as though the phone was searched on consent rather than pursuant to the border search exception. Can I go back to the rule that you're asking for? If someone had a big hard copy folder of papers, and among those papers were child pornography, that would be searchable under the border exception without particularized, individualized suspicion. But if those same images are on a phone, they are not searchable under your standard. What sense does that make? How do we reconcile that? Well, I think the Supreme Court reconciled that in Riley, and this court emphasized that in Smith. Cell phones in particular are something categorically different than ordinary personal effects like a notebook. Let's dig down into that. Is it because there's so much other stuff that is personal and the quantity of stuff is so much greater that makes it different? What is it that makes it different? Yeah, I think that's right. I think the cell phone has the capacity to store, as Judge Wesley was noting, your payment records, your tax records, everything about your life can be reconstructed through a digital data storage mechanism. And that's just simply not true of a paper file. So I'll just note, for example, in Riley, even though the actual searches done in that case were relatively limited. For example, in one of the two consolidated cases, the search consisted of an officer opening a flip phone, looking at the photo that was set at the wallpaper, clicking one button to get to a contact list, and then clicking a second button to identify the number associated with the My Home tag. Even that limited search, the Supreme Court said, implicated the fundamental privacy rights of searching someone's digital life. What do you say to your adversary's example of a person who crosses the border in a mobile home and then comes back? They live there. Everything is there. Is there any restraint or limit on what the border search can be of a mobile home? You know, I don't think this court has encountered a mobile home case before. I don't know if any courts have. That's why we turned the lights on. Well, I would also just note, you know, in Riley, the Supreme Court said a cell phone can often expose more private information than even the most exhaustive search of a house. So, to the extent there is any house case law out there, and I'll admit I'm not familiar with any mobile home cases in any of the circuits, but even if that kind of search could be part of the border search exception, there is reason to treat cell phones as different than physical spaces. And just to turn quickly to the good faith exception and the reasonable suspicion analysis, or to turn to the good faith exception and the state of the law, I think that this court's decision in Irving and the Supreme Court's decision in Riley taken together would have made it clear to any reasonable official that at least the search of a cell phone is non-routine. We'd agree that, you know, it wouldn't have been clear to a reasonable official that probable cause might be the requirement, but certainly where Irving says the entire question is how substantial an infringement on privacy in a particular search is, and where Riley says the search of a cell phone is one of the most significant invasions of privacy that can be worked, no reasonable officer could have read those two precedents that are binding and appellate precedents in this circuit for any other proposition than the search of a cell phone being non-routine. If your honors have any further questions, I'm happy to answer them, or else we'll rest on the briefs. Thank you, counsel. Thank you very much. We'll hear a vote. Thank you, your honors. Just to address briefly what my adversary has said about the issue of a motion to dismiss, the statute 3731 states in its own terms that it's supposed to be liberally construed. Given the record that's been established here about the process that was followed, the government submits that in doing that analysis and liberally construing the statute, the government has easily met the terms of the requirements of the statute, which, as this court's own precedents state, is not a jurisdictional bar to this court hearing the appeal. Turning back to the merits, the argument that counsel is advancing would mean that there has to be a higher level of suspicion for the search, a brief manual search just by hand of someone's cell phone than extremely invasive searches, which the Supreme Court— Why does it have to be brief? You said that a couple times. Here it was half an hour or longer. And where's the limitation for looking for—if you're looking for—I don't know, you don't have to have a reason, but if you're looking for contraband and a phone has a lot of things, what's the guarantee that it would be brief? The point I'm trying to make is that in this case, it was a brief manual search. The rule you're asking for has no limitation on the length of time. Well, certainly with a manual search, given the case law that has been set forth in other circuits and given this court's own discussion of manual searches, there wouldn't necessarily be a limitation. But what I'm saying is that in this case, we're talking about a 15-minute search. It certainly falls well within the parameters of routine. What if the customs border patrol officer— So you're saying that they open the phone and you're talking about a manual search. And what does that entail? Clicking on apps? So the customs officer explained at the hearing in this case exactly what she did. She opened the phone. She went to the camera roll. She flipped through it. And then she went to a file that was called My Favorites. And that's when she—in her words, that's when she found it. So that's what happened here. And the moment she found the child pornography, she stopped the search. So that's all that happened. It was no more invasive than that. And so for these reasons, this routine search in this case— Well, if someone—okay, so she had a particularized notion of what she wanted to look for. She did. She knew what she was looking for, and she testified at the hearing she was looking for child pornography. And that's what she was looking for. So she looked in places where the child pornography would be found, the camera roll and also a file called My Favorites. And she explained why she went to that particular file. Once an officer has a—and yet that's still a routine search. Correct. Because even though she's got a particularized suspicion of where she needs to look, she gets consent to open the phone and kind of just browse. It's not consent. She's using the border search exception. So she's exercising compulsion. Well, she—I mean, he gave her the password. So your—it was the warrant application that characterized it as consent, not me? It is not, Judge. Respectfully, the warrant application says that he voluntarily gave the passcode, but he had been informed that it was a border search, and the warrant application makes clear that it was a border search that was being conducted. It was not a voluntary or consensual search at all. All right. If somebody wants to search my shoes, I take my shoes off. Is that voluntary? I mean, I can hardly say no. So as we discuss in our papers, voluntary is a word that has legal meaning. It means it wasn't coerced. There actually have been several district courts that have considered whether or not giving the password for a phone equals consent to search that phone, and they have said no, it does not. It is not the same as consent. And a magistrate judge, as this Court's presence made clear, would be assumed to not insert things into a warrant that are not there. So the example that is given is if a warrant does not say that an informant has a criminal record, the magistrate judge is not going to assume that the informant does. Here, the warrant does not say it was a consensual search. The magistrate judge is not going to assume that it was a consensual search. What does Customs and Border Patrol do if someone says, no, I'm not going to give you my password? Yeah, so that is something that was asked of the officer at the hearing, and the officer said that she would have to then confer with a supervisor to see what steps to take next. But obviously if it prevents someone from accessing the phone, there may not be much of a recourse. There might have to be a determination as to whether if they're going to do a more advanced search, so a forensic search using computers, that would fall within Customs and Border Protection's regulations. Would that trigger a requirement of a higher level of suspicion? So that's obviously not something that's an issue in this case. There has been discussion in some of the circuits that that would maybe be a non-routine search, but that is not the issue in this case. It's troubling because every person's phone has gateways to a large number of I mean, the world that we live in changed radically after 2007, the introduction of the smartphone. Curious if they called it a smartphone. And so we live in this world of this small, black, generally black, not always black, but device, and it contains all the aspects of our lives. I mean, all the contacts I've had over the years, are all contained in there. Correspondence between colleagues is contained in there. Drafts of opinions are contained in there. Very highly personal information with regard to my finances are contained in there. Is a routine search include all those that the officer could just peruse any of those things if they're accessible? So the things that you've mentioned, while obviously sensitive, could be contained in someone's briefcase, could be contained in their home. Let me tell you, when I drive, if someone asks to go into a briefcase, that's a routine search? Yes, at the border, if they look in your briefcase, there's no question. I think my adversary would agree that. My checkbook might be in the briefcase, but I guarantee you, not nearly as much information as contained in my cell phone is contained in a briefcase. It's not capable of that. I'd have to have four mobile homes crossing the border. Well, certainly under the facts of this case, the search that was done was brief. Well, I understand the nature of the search, but it's characterized as routine, and I'm trying to figure out what's routine. What makes it routine? Is it routine because it's short? Is it routine because it's just a brief perusal, even though the officer has a specific object in mind? What makes it routine is the level of invasiveness. That's what the court has said in Irving. So here, what makes this search routine, this manual search, is the fact that it was short, but it was also the officer looked in the camera roll and looked in a folder and then immediately found the child pornography. She didn't look in other parts of the phone. So certainly on the facts of this case, this is certainly a routine search. I see that my time has expired. I would like to just address some things about the good faith exception, if I might. Go ahead, Griffin. Thank you. So under the facts of this case, the officers involved would have been objectively unreasonable to believe that any heightened level of suspicion was needed. Given this court's opinions in Irving and Levy, which talked about personal property almost always being a routine search and saying that the label non-routine would be reserved for invasive searches of the body, such as someone's elementary canal, it would not have been reasonable. For which only reasonable suspicion is required, right? For which only reasonable suspicion is required. So it would be odd to treat a piece of property with higher degree of protection than your cavities. That's correct, Judge Park. So it would have been unreasonable to think that a piece of personal property would have required a standard higher than the most invasive searches of someone's body. Well, under your rule, then, you don't have to have a reason at all. You can just look, right? For a routine search. Am I right? For a routine search, it's correct. So exactly what she did, she didn't have to have a reason. All she had to do was look. Exactly. It was a routine search, so she just needed to – she was able to, within her border search authority, do this search. So you're telling me that at the Canadian border, CB – the Customs and Border Patrol can, anytime they want, ask me to produce my phone or ask any other citizen or non-national coming back into the United States to produce their cell phone, and they can just – and they must produce the phone, and someone can kind of just go through it casually, wondering if something's there. A suspicionless search. It would be a routine suspicionless search. That's what this Court's presence – and it's not just this Court. It's also the circuits that have decided this issue. I understand it's other circuits. This is the Second Circuit. So one of my responsibilities with my colleagues is to chart the course of law in the Second Circuit. The other circuits can do so to their wish, but only when the Supreme Court tells me that that's the law, then we'll all follow it. I understand, Judge. But I would say that in light of the good faith exception, given what a reasonable officer would have thought, obviously looking at the circuits that have decided this issue before and especially looking at this Court's decision in the Maher case, which talked about how the decisions of other circuits would be considered in the context of the good faith exception, when this Court, as Your Honor has said, has not decided this issue, that those decisions counsel in favor of what happened here. The athlete did everything right. He informed the magistrate judge that there was a border search that was conducted. What was found, he made clear the necessary context, and then he sought a warrant to ensure that an additional search would be within the parameters of the Fourth Amendment. This is what we want CBP officers and HSI agents to do. Given the universe of what you're describing as a search that would be routine, you start to wonder what would not be routine. Well, we know what would not be routine because the Supreme Court has told us and this Court has told us that invasive searches of the body are certainly not routine. So everything is routine? Even except an invasive body search. Well, there's cases that this Court has held where somebody being asked to remove their artificial leg was a non-routine search. It was an invasive search of the body. Now, obviously, that may not be as invasive as the search of someone's elementary canal, but the Court drew a line, and these lines are important for, obviously, agents to be able to make sure they're acting within the Fourth Amendment. And so that is the guidance that was provided to agents, and the agents in this case were acting according to that guidance. They were acting in good faith based upon what the state of the law was at the time, the decisions of this Court, and obviously their views were informed by the decisions of other circuits. And then just very briefly, going back again to this issue of the search being out of context, grabbing of this one sentence that the district court did, really does not do justice to the full body of the warrant. Which sentence are you speaking of? There's a sentence that counsel in the district court seized on where the affiant says that Mr. Robinson voluntarily provided the passcode for his phone. And the Court envisioned some scenario where the affiant believed that his search may have possibly had some constitutional infirmity, even though that was not what was suggested by this Court's precedents and precedents from other circuits. And so basically contrived and came up with some way to deceive the district court into believing that the search was on consent, so as to avoid any constitutional infirmity of a border search. That is not borne out by the facts in this case. There's nothing in the hearing record that even remotely supports that. He didn't say consent anyway. It said voluntarily. Correct. The word consent appears nowhere. The word border search. So it's just voluntary as opposed to coerced, but not by consent. Your Honor, he's exactly right. I appreciate the extra time. I see it's expired. Thank you, Your Honors. Thank you, counsel. Thank you both. We'll take the case under advisement. Nicely argued, though.